UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DAVID P. STEPINSKI,            :
        Plaintiff,             :
                              :
        v.                    :        CA 11-183 ML
                              :
MICHAEL J. ASTRUE,            :
COMMISSIONER OF               :
SOCIAL SECURITY,              :
        Defendant.            :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter is before the Court on the request of Plaintiff David P. Stepinski ("Plaintiff") for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"), under §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("the Act"). Plaintiff has filed a motion to reverse or, alternatively, remand the decision of the Commissioner. See Plaintiff's Motion to Reverse without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Docket ("Dkt.") #8) ("Motion to Reverse"). Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the Commissioner's decision. See Defendant's Motion for an Order Affirming the Decision of the Commissioner (Dkt. #11) ("Motion to Affirm").

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I find that the Commissioner's determination that Plaintiff is not disabled is supported by substantial evidence in the record and is legally correct. Accordingly, based on the following analysis, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

## Facts and Travel

Plaintiff was born in 1980 and was twenty-six years old as of the alleged onset date of his disability. (Record ("R.") at 14, 119) He has an ninth-grade education,[1] is able to communicate in English, and has past relevant work experience as a fast food cook, cashier, and dipper. (R. at 14, 196, 201, 211-12)

Plaintiff filed an application for DIB on December 23, 2008, (R. at 119), alleging disability beginning on January 1, 2007, due to Crohn's disease, arthritis, and back problems, (R. at 128, 197). Plaintiff also filed an application for SSI on December 23, 2008. (R. at 119) These applications were denied initially on February 16, 2009, (R. at 7, 60-63), and on reconsideration on August 4,

---

[1] While Plaintiff's Disability Report - Adult forms completed in support of his applications for DIB and SSI state that he completed the eleventh grade, (Record ("R.") at 172, 201), Plaintiff testified at the November 18, 2010, hearing before the Administrative Law Judge ("ALJ") that he completed the ninth grade, (R. at 26). Additionally, Plaintiff's attorney stated at the hearing that Plaintiff has a ninth grade education. (R. at 25)

2009, (R. at 7, 67-69, 70-72). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (R. at 7, 73-77) A hearing was held on November 18, 2010, at which Plaintiff, represented by counsel, appeared and testified, as did an impartial medical expert ("ME") and an impartial vocational expert ("VE"). (R. at 7, 22-48)

On November 29, 2010, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. at 7-16) The Decision Review Board selected the ALJ's decision for review, but did not complete its review within the ninety days allotted for such review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. at 1) Thereafter, Plaintiff filed this action for judicial review.

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

Pursuant to the statute governing review, the Court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's role

in reviewing the Commissioner's decision is limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[2] are conclusive. Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)).  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420 (1971))).

---

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales, 402 U.S. at 401).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act. See 42 U.S.C. § 423(a). An individual is eligible to receive SSI if he is aged, blind, or disabled and meets certain income requirements. See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. 423(d)(1)(A). A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[4] 20 C.F.R. §§ 404.1521(a) (2011),

---

[3] The ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2010. (R. at 9)

[4] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b) (2011). Examples of these include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;

416.921(a) (2011).[5] A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a) (2011).

The Social Security regulations prescribe a five step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520(a) (2011); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy. See 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. See Seavey v. Barnhart, 276 F.3d at 4.

---

(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

Id.

[5] The Social Security Administration ("SSA") has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, the Court hereafter will cite to one set of regulations only. See id.

"The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since January 1, 2007, his alleged onset date, (R. at 9); that Plaintiff's Crohn's disease, low back pain, and protrusion with impingement but no neurological deficits were severe impairments, (R. at 10-11), but his major depressive disorder single episode, moderate, and panic disorder without agoraphobia were not, (R. at 11); that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, (id.); that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work, but that Plaintiff could stand or walk for four hours out of an eight hour workday, with occasional forward bending, climbing, kneeling, stooping, crouching, crawling; and with neither concentrated exposure to pulmonary irritants nor to unprotected heights or dangerous equipment, (R. at 12); that Plaintiff would

need easy access to a restroom with up to two restroom breaks in the morning and two restroom breaks in the afternoon, (id.); that Plaintiff's medically determinable impairments could reasonably be expected to have caused the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC assessment, (R. at 12-13); that Plaintiff was unable to perform any past relevant work, (R. at 14); that Plaintiff was born in 1980 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date, (id.); that Plaintiff had a limited education and was able to communicate in English, (id.); that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding of "not disabled," (id.); that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy which Plaintiff could perform, (id.); and that Plaintiff was not under a disability, as defined in the Act, from January 1, 2007, through the date of the ALJ's decision, (R. at 15).

## Errors Claimed

Plaintiff alleges that: 1) the ALJ erred in evaluating Plaintiff's pain and credibility; 2) the ALJ failed to provide an accurate hypothetical to the VE; and 3) the ALJ's finding that

Plaintiff's depression and panic disorder were not severe impairments is not supported by substantial evidence.

## Discussion

## I.   The ALJ's Evaluation of Plaintiff's Pain and Credibility

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible to the extent they were inconsistent with the ALJ's RFC assessment. (R. at 12-13) Plaintiff contends that the ALJ's evaluation of Plaintiff's pain and credibility is legally insufficient because the ALJ allegedly failed to comply with Social Security Ruling ("SSR") 96-7p. See Plaintiff's Memorandum in Support of Plaintiff's Motion to Reverse without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision ("Plaintiff's Mem.") at 9. SSR 96-7p requires an ALJ to consider seven factors[6] (in addition to the

_____

[6] The seven factors are:

1.    The individual's daily activities;
2.    The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.    Factors that precipitate and aggravate the symptoms;
4.    The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.    Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.    Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g.,

objective medical evidence) when assessing the credibility of an individual's statements. Plaintiff contends that the ALJ's consideration of one of those factors, his daily activities, is insufficient, see Plaintiff's Mem. at 10-11, and that the ALJ committed "two harmful errors," id. at 11, in discussing another factor, namely Plaintiff's treatment, see id. at 11-12.

### A. *Daily activities*

The ALJ discussed Plaintiff's daily activities in two portions of her decision:

> The claimant testified that he has custody of his 9 year old son. He testified that on a daily basis he walked his son to school (4 minutes) and then he would have to rest. The claimant stated he stayed in bed watching television, he did some housework, prepared quick meals, and was able to use public transportation. He testified that he could sit up to 30-45 minutes moving around, and stand up to 10-15 minutes at a time moving around. The claimant stated that he felt depressed and didn't want to get out of bed. On an average day, the claimant was off his feet for ½ the day, just laying there, watching television or falling asleep. He occasionally had sleep problems. The claimant testified that he collected Welfare and had to either go to school, or to job training, and he went for his GED. He stated he couldn't do the walking.
>
> ....
>
> The record establishes the claimant is able to perform

---

lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
  7.    Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; see also Avery, 797 F.2d at 29 (listing factors relevant to symptoms, such as pain, to be considered); 20 C.F.R. § 404.1529(c)(3) (2011) (same).

personal hygiene and grooming. He did not allege any difficulty in handling household finances. In a form completed in the process of applying for disability benefits, the claimant reported that he prepared simple meals, cleaned, did laundry, washed dishes, and shopped. He was able to use public transportation. He spent time watching television and playing with his son. He is the sole caretaker for his son. The claimant testified that he had custody of his nine year old son and has a cat. The claimant walks his son to the bus. The claimant's description of daily activities is consistent with an individual who lives independently and adequately maintains a household.

(R. at 12-13)

Plaintiff quotes a portion of the above but omits the last six sentences of the second excerpt and mistakenly asserts that "[t]hereafter, no discussion of Stepinski's daily activities takes place." Plaintiff's Mem. at 11. While the omitted sentences contain some repetition of facts previously stated, taken as a whole, the sentences are part of the discussion of Plaintiff's daily activities. This is evident from the concluding sentence of the paragraph in which the ALJ summarizes his finding with respect to Plaintiff's daily activities.

Plaintiff additionally contends that the ALJ erred in citing Plaintiff's responses in a disability questionnaire which was completed "years before the hearing, when his responses at hearing reflect a worsening medical condition." Id., see also (R. at 28-36). The Court is not so persuaded. To begin with, the disability questionnaire which the ALJ appears to have referenced was completed on January 15, 2009, (R. at 227, 229), less that two

years before the November 18, 2010, hearing.  More importantly Plaintiff's testimony at his hearing did not vary greatly from the contents of the disability questionnaire which the ALJ cited.  (R. at 24-48, 219-29)  At the hearing, Plaintiff stated that he occasionally walked his son to school, cleaned the house, did laundry and washed dishes.  (R. at 28-30)  The ALJ noted these activities in her opinion.  (R. at 12-13)  Again, these activities do not indicate a great departure from his descriptions of daily activities in the disability questionnaire.[7]

Also weighing against Plaintiff's argument that there had been a significant deterioration in his daily activities is the information contained in the November 2, 2010, mental health assessment performed by Gateway Healthcare, Inc., less than three weeks before the hearing.  (R. at 370-82)  Plaintiff's scores pertaining to his life skills, including his personal hygiene, food planning and preparation, shopping, use of major appliances, ability to access appropriate transportation and safely navigate his community, ranged from four to five (with a score of one indicating "no ability" and a score of seven indicating "very able").  (R. at 377)

In summary, the Court finds that the ALJ's consideration of

---

[7] In the earlier completed disability questionnaire, Plaintiff indicated that his mother, who lived with him, helped care for Plaintiff and his son.  (R. at 220, 222)  By the time of the hearing, Plaintiff's mother had passed away, and Plaintiff had been caring for his son and maintaining the household for eight months without her assistance.  (R. at 373)

Plaintiff's daily activities was at least adequate.  Substantial evidence supports her conclusion that Plaintiff was able to live independently, maintain a household, and care for his nine year old son.

### B.    *Treatment*

Plaintiff also contends that the ALJ committed two errors in her consideration of Plaintiff's treatment.  <u>See</u> Plaintiff's Mem. at 11.  Although Plaintiff clearly identifies the first error with the label "First," <u>id.</u>, the Court is uncertain as to what Plaintiff contends constitutes the second error as there is no "Second" in Plaintiff's Mem., and a careful examination of the arguments following the word "First" still leaves the matter in doubt.  The first alleged error is that "[the ALJ] repeatedly states that there are 'no neurological deficits."  <u>Id.</u> (citing R. at 10).  As best the Court can discern, the second error appears to be that the ALJ's "completely fails to regard the fact that the Plaintiff is diagnosed with inflammatory arthritis, which is being treated by a rheumatologist," <u>id.</u> (citing R. at 340), and that "all she concerns herself with is the absence of neurological findings," <u>id.</u> Plaintiff argues that "[t]he absence of neurological findings is completely irrelevant to inflammatory arthritis, because there the pain is caused by the inflammation and stiffness of joints, and not by any nerve involvement."  <u>Id.</u>

Addressing these complaints in order, in point of fact, the

phrase "no neurological deficits" appears only once in the ALJ's ten page decision, i.e., in the bold-type finding regarding Plaintiff's severe impairments. (R. at 10) The similar phrase "no neurological impairment," appears twice in the ALJ's discussion of the evidence. (R. at 11, 13) The paragraphs containing the latter words are reproduced in part below::

> John Pella, MD, an impartial medical expert, appeared and testified at the hearing. Dr. Pella stated the evidence of record shows the claimant had a history of low back pain. Radiograph studies have shown L4, L5 disc protrusion with some impingement of the nerve root left side. The claimant was evaluated and felt to have non surgical disease and **no neurological impairment.** Dr. Pella testified that the claimant had primarily a pain syndrome and had been receiving non-analgesics in that regard. Dr. Pella reported the claimant had a history of crohn's disease and had been followed with periodic colonoscopies. The impartial medical expert testified that the claimant has had no major complication issues with regards to the crohn's disease and his weight has remained relatively stable. The claimant is currently on bi-weekly injections of Humera, which appears to have controlled the crohn's fairly well. Dr. Pella stated the claimant did have some history of migraines as well as some bursitis in the record but that they were not significantly impairing conditions.

(R. at 11)(bold added).

> The claimant has not required hospitalization or surgery for any physical impairment. In the evidence of record there are no x-rays, MRIs, nerve conduction studies, EMGs or CT scans that showed the claimant was disabled. The record does not contain results from MRIs, EMGs, or CT scans that show severe lumbrosacral pathology. The claimant has not had any real treatment for his low back pain, nor has he required hospitalization or surgery. Dr. Pella stated the evidence of record shows the claimant had a history of low back pain. Radiograph studies have shown L4, L5 disc protrusion with some impingement of the nerve root left side. The claimant was evaluated and felt to have non surgical disease and

**no neurological impairment.**

(R. at 13)(bold added).

The Court is satisfied that the ALJ used the phrase in the context of discussing Plaintiff's medical history, the medical evidence, and the testimony of the ME. In the first paragraph above, the phrase is followed almost immediately by a recitation of Plaintiff's history of Crohn's disease, migraines, and bursitis. The paragraph which immediately follows the second excerpt above continues the discussion of Plaintiff's Crohn's disease. Clearly, the ALJ was not referring to Plaintiff's lack of neurological impairment simply relative to Plaintiff's arthritis.

Plaintiff is mistaken in his assertion that "[n]owhere in the decision does the ALJ reference [that Plaintiff has been diagnosed with inflammatory arthritis which is being treated by a rheumatologist] ...." Plaintiff's Mem. at 11. The ALJ stated that "Dr. Reardon reported in November 2007 that the claimant had lumbar disc disease and inflammatory arthritis." (R. at 10)(citing R. at 340). In addition, the ALJ mentioned Plaintiff's diagnosis, symptoms, and treatment of arthritis. The ALJ noted the following facts in her opinion: 1) in 2007, Plaintiff had occasional hand pain, especially at night, (R. at 10, 259, 279); 2) Plaintiff's rheumatologist found Plaintiff had diffuse arthralgias that year, (R. at 10, 280); 3) Plaintiff's neurologist noted that Plaintiff had a history of rheumatoid arthritis and recommended that

Plaintiff begin physical therapy, (R. at 10, 293, 296); 4) Plaintiff was stable by February 2008, (R. at 10, 293); 5) he was diagnosed with heel spur syndrome/bursitis of the left foot in June 2009, (R. at 11, 344); 6) Plaintiff underwent physical therapy in July and August 2009, (R. at 11, 346-50); and 7) Plaintiff was doing well on his medications by 2010, (R. at 11, 352). Thus, the ALJ discussed Plaintiff's arthritis beyond merely noting the absence of neurological findings as Plaintiff alleges. See Plaintiff's Mem. at 11.

While it would have been preferable for the ALJ to address Plaintiff's arthritis symptoms in more detail, the Court is satisfied that the ALJ considered them. Cf. Frustaglia, 829 F.2d at 195 ("Although more express findings, regarding head pain and credibility, than those given here are preferable, we have examined the entire record and their adequacy is supported by substantial evidence.")(internal citation omitted). Accordingly, Plaintiff's claim that the ALJ failed to consider his diagnosis of inflammatory arthritis in evaluating his pain is rejected. The ALJ's reference to "no neurological deficits," (R. at 10), was in the context of discussing Plaintiff's back pain. The Court finds no error in the ALJ's statement.

### C. Reasons for Credibility Finding

Plaintiff also appears to contend that the ALJ failed to comply with the following portion of SSR 96-7p (which Plaintiff

16

quotes adding the emphasis shown below):

> It is **not sufficient** for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also **not enough** for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision **must** contain specific reasons for the finding on credibility, supported by the evidence in the case record, and **must** be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2 (bold added); see also Plaintiff's Mem. at 9 (quoting SSR 96-7p with emphasis shown above). The Court infers from the emphasized words that Plaintiff contends that the ALJ violated her duty to give clear and specific reasons for her finding regarding Plaintiff's credibility.[8] See Plaintiff's Mem. at 9-10.

The ALJ set forth her reasons for finding Plaintiff not credible over the course of four paragraphs. (R. at 12-13) Having already discussed the medical evidence in the record at considerable length, (R. at 10-11), the ALJ noted that Plaintiff's alleged limitations in sitting, standing, walking, and the need to lie down were not substantiated by competent medical evidence to the degree alleged, (R. at 13). As already discussed herein, she detailed Plaintiff's daily activities and found them consistent

---

[8] This inference is necessary because Plaintiff does not explicitly state how the ALJ allegedly failed to comply with SSR 96-7p. See Plaintiff's Mem. at 9-12.

with an individual who lives independently and adequately maintains a household. (Id.) She cited the fact that although Plaintiff alleged disability due to back pain, he had not required hospitalization or surgery for any physical impairment. (Id.) The ALJ noted that there were no x-rays, MRIs, nerve conduction studies, EMGs, or CT scans that showed Plaintiff was disabled. (Id.) She additionally noted that there were no MRIs, EMGs, or CT scans that showed severe lumbrosacral pathology. (Id.) She observed that Plaintiff had "not had any real treatment for his low back pain ...." (Id.) The ALJ cited the testimony of the ME who "testified that the claimant has had no major complication issues with regards to crohn's disease and his weight has remained relatively stable." (R. at 13, 37) She described Plaintiff's Crohn's disease as being "well controlled," (R. at 13), and the ME's testimony supports this description, (R. at 37), as does the other evidence in the record, (R. at 26, 31, 36-38, 228, 305, 315, 352, 361). The ALJ cited the ME's testimony that Plaintiff would be limited to work at the light exertional level with limitations of standing and walking four hours out of an eight hour workday with no repetitive forward bending and that he would need bathroom access "ad lib." (R. at 13, 37) The ALJ also cited the opinion of the state agency medical consultant who found Plaintiff capable of light work activity with standing and/or walking four hours out of an eight hour workday and some nonexertional limitations. (R. at

13, 284-92)  It can be reasonably inferred that the ALJ's purpose
in citing to the opinions of these medical professionals was to
contrast the capabilities they determined Plaintiff possessed with
the far lesser capabilities to which he testified at the hearing.

The Court also notes that Plaintiff was questioned at the
hearing regarding the required factors with respect to his
complaints of pain.  See SSR 96-7p, 1996 WL 374186, at *3; see also
Frustaglia, 829 F.2d at 195.  Plaintiff testified as to his daily
activities, (R. at 28-30); the location, duration, frequency, and
intensity of his symptoms, (R. at 32-36); factors that precipitated
and aggravated the symptoms, (R. at 26-34); the type, dosage, and
effectiveness of his medications, (R. at 26-28, 30-32); treatment
other than medication he received, (R. at 26); and measures other
than treatment he used to relieve his symptoms, (R. at 31-32).  The
ALJ thus met her duty to consider the factors outlined under Avery.
272 F.2d at 29, see also 20 C.F.R. § 404.1529(c)(3).

It is true that the ALJ did not mention every fact in the
record regarding Plaintiff's daily activities, including
Plaintiff's testimony that sometimes he did not eat due to his back
and stomach conditions, (R. at 30), or that he at times received
help with doing laundry, (R. at 29).  This, however, was not error.
The fact that the ALJ did not note all of Plaintiff's other daily
activities does not mean that she ignored that evidence.  See Black
v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)("An ALJ's failure to

cite specific evidence does not indicate that such evidence was not considered.").[9]

Additionally, the ALJ's credibility finding is generally entitled to deference, especially when supported by specific findings. <u>Frustaglia</u>, 829 F.2d at 195 (citing <u>DaRosa v. Sec'y of Health & Human Servs.</u>, 803 F.2d 24, 26 (1st Cir. 1986)); <u>see also</u> Yongo v. INS, 355 F.3d 27, 32 (1st Cir. 2004)("[T]he ALJ, like any fact-finder who hears the witnesses, gets a lot of deference on credibility judgments."); <u>Suarez v. Sec'y of Health & Human Servs.</u>, 740 F.2d 1 (1st Cir. 1984)(stating that ALJ is "empowered to make credibility determinations ...."); <u>accord</u> <u>Harrell v. Bowen</u>, 862 F.2d 471, 482 (5th Cir. 1988)("It must be remembered that [t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.")(internal quotation marks omitted).  While the ALJ could

---

[9] An ALJ is not required to address every piece of evidence in the record.  <u>See</u> <u>Rasmussen-Scholter v. Barnhart</u>, No. Civ.A. 03-11889-DPW, 2004 WL 1932776, at *10 (D. Mass. Aug. 16, 2004)(noting that "the ALJ need not directly address every piece of evidence in the administrative record")(citing <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 915 F.2d 1557, 1990 WL 152336, at *1 (1st Cir. Sept. 11, 1990)(per curiam, table decision)("An ALJ is not required to expressly refer to each document in the record, piece-by-piece"); <u>NLRB v. Beverly Enters.-Mass., Inc.</u>, 174 F.3d 13, 26 (1st Cir. 1999)(noting in labor context that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted"))(alteration in original); <u>accord</u> <u>Black v. Apfel</u>, 143 F.3d at 386 (noting that "an ALJ is not required to discuss every piece of evidence submitted"); <u>Diaz v. Chater</u>, 55 F.3d 300, (7th Cir. 1995)(noting that "an ALJ need not provide a complete written evaluation of every piece of testimony and evidence").

have been more explicit with respect to stating the reasons for her credibility finding, the Court is satisfied that the she adequately complied with the requirements of SSR 96-7p.[10]

In sum, the record does not support Plaintiff's claim that the ALJ failed to consider that he had been diagnosed with inflammatory arthritis and, therefore, erroneously evaluated Plaintiff's complaints of pain. Plaintiff's first claim of error should, therefore, be rejected. I so recommend.

## II. **The Hypothetical Posed to the VE**

Plaintiff additionally contends that the ALJ's step five findings were not supported by substantial evidence because the ALJ allegedly posed an inaccurate hypothetical question to the VE. See Plaintiff's Mem. at 13. Specifically, Plaintiff argues that the ALJ did not ask the VE to consider the length of bathroom breaks or their predictability. See id. at 14. In support of this argument, Plaintiff cites his hearing testimony that when he sleeps, he wakes up because "it feels like a bomb goes off in my stomach" and he has to use the bathroom.[11] Plaintiff's Mem. at 14 (citing R. at 44).

_____

[10] The Court notes that Plaintiff's hearing testimony regarding when he last worked conflicts with information contained elsewhere in the record. The ALJ asked Plaintiff if he had "worked at all since January 1st, 2007." (R. at 25) He answered "No." (Id.) Yet, only days before Plaintiff told a social worker at Gateway Healthcare, Inc., that he had worked as an attendant at a Shell gas station from November 1, 2006, to October 15, 2008. (R. at 375)

[11] It bears noting that Plaintiff continues to smoke, (R. at 31, 371), despite having been "advised strongly to stop tobacco in light of Crohn's," (R. at 332), by Dr. Joseph Lowney on February 25, 2009. See Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 534 (1st Cir.

21

The ALJ propounded the following hypothetical to the VE:

Assume a hypothetical individual of the claimant's age,
education and vocational background, capable of
performing at the light exertional level with
occasion[al] climbing, kneeling, stooping, crouching and
crawling, no unprotected heights or dangerous equipment.
.... [and] [o]ccasional forward bending.

(R. at 41)  Based on this hypothetical, the VE testified that

Plaintiff could perform his past work as a dipper, (id.), and that

he could also perform unskilled production type jobs such as hand

packager inspector, printed circuit board assembler, and polisher

(id.), as well as service jobs such as parking lot cashier, (R. at

42).  The ALJ then posed the same hypothetical "at the sedentary

exertional level," (id.), and the VE responded that the person

could perform unskilled sedentary production jobs such as table

worker or bench hand as well as some service jobs such as unskilled

sedentary information clerk, (id.).

The ALJ further restricted the original hypothetical by adding

standing and walking for no more than four hours a day.  (R. at 43)

With this added restriction, the VE testified that the number of

jobs would be reduced and that a "reasonable reduction would be

---

1988)("If a claimant does not follow prescribed treatment 'without a good
reason,' he or she will not be found to be disabled.")(quoting 20 C.F.R.
§§ 404.1530(b), 416.930(b) (2008)); Dumas v. Schweiker, 712 F.2d 1545,
1553 (2nd Cir. 1983)(affirming denial of benefits where claimant failed
to heed doctor's diet recommendation which would have helped hypertension
and headaches); cf. Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008)
(holding that "the ALJ appropriately considered [plaintiff]'s failure to
stop smoking in his credibility determination" where "there [was] no
dispute that smoking has a direct impact on [plaintiff]'s pulmonary
impairments").

about 50 percent," (id.).  When asked whether the need to lie down
for an hour a day (which could not be accommodated by normal work
breaks) would affect his answer, the VE answered such a person
would not be able to maintain employment.  (Id.)

Lastly, the ALJ posed the following questions to the VE:

[I]f the individual needs ready access to a restroom,
would that affect any of the jobs you gave? ...  Do these
jobs have -- they have normal work breaks in the morning
and afternoon?  Do they also -- would they also allow
somebody to make one unscheduled break for the bathroom
during the . . . or, one or two?[12] ...  If the individual
had the need to use the restroom twice in the morning,

---

[12] The colloquy between the ALJ and the VE regarding unscheduled
bathroom breaks is reproduced below:

Q   Do these jobs have -- they have normal work breaks in the
    morning and afternoon?  Do they also -- would they also
    allow somebody to make one unscheduled break for the
    bathroom during the --

A   Yeah, I think that's very reasonable.

Q   -- or, one or two?

A   Yeah.

Q   Okay.

A   And there would be a -- you know, that's very common with
    anyone and of course if somebody needed an accommodation,
    that's a very reasonable accommodation.

....

Q   Let me go back to my last question.  If the individual
    had the need to use the restroom twice in the morning,
    including during the work break, and twice in the
    afternoon, including during the work break, that would
    be -- that's reasonable, you said?

A   I, I, I feel that's reasonable.

(R. at 44-45)

>           including during the work break, and twice in the
>           afternoon, including during the work break, that would be
>           – that's reasonable, you said?

(R. at 43-45)   The VE responded that most of the jobs the
hypothetical individual could maintain would have access to a
restroom and that the number of breaks would be reasonable.  (Id.)

     Plaintiff complains that the ALJ did not ask the VE to
consider the length of his bathroom breaks or their predictability.
See Plaintiff's Mem. at 14.   With respect to the latter
consideration, the record is clear that the ALJ included in his
hypothetical the need for the individual to take unscheduled
bathroom breaks.  (R. at 43-45)  Accordingly, this complaint is
rejected.

     With respect to the complaint that the ALJ did not ask the VE
whether the bathroom breaks of five to ten minutes[13] would affect
his testimony regarding the number of available jobs, Plaintiff's
counsel questioned the VE regarding his testimony, (R. at 45-47),

---

[13] Plaintiff testified regarding his use of the restroom:

    Q   In general, how often do you have to use the restroom as
        a result of your Crohn's[?]

    A   I'm in the restroom at least three to four times a day,
        sometimes if I'm feeling okay, sometimes maybe two times,
        but rarely.  It's a lot, three, mainly three, four times.

    Q   And when you're in there, how long are you in there
        generally?

    A   Anywhere from five to ten minutes.

(R. at 30-31)

and did not ask about this matter, (id.). Indeed, counsel concluded his questioning of the VE by stating "that's all, Judge." (R. at 47)

The Court views unfavorably the silence of Plaintiff's counsel at the hearing regarding the omission about which he now complains. See Pearson v. Fair, 808 F.2d 163, 166 (1st Cir. 1986)("[A] party cannot sit silently by, await the entry of judgment, and only then (having seen the result and having been disappointed thereby) bemoan the court's failure to take evidence."); Mandiej v. Chater, 944 F.Supp. 121, 131 (D.N.H. 1996)(rejecting Plaintiff's argument that the ALJ did not thoroughly question the VE because the ALJ "afforded plaintiff the opportunity to question the vocational expert and supplement the hypothetical"). Reversal and remand because of the omission about which Plaintiff now complains would encourage other counsel to remain silent in similar circumstances. This Court is disinclined to provide such an incentive. Accordingly, the Court finds that Plaintiff waived this issue by failing to raise it before the ALJ. See Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001)(affirming district court's finding that plaintiff waived claim by making no mention of it to ALJ); see also Sims v. Apfel, 530 U.S. 103, 112, 120 S.Ct. 2080, 2086 (2000) (O'Connor, J., concurring in part)("In most cases, an issue not presented to an administrative decision maker cannot be argued for the first time in federal court.").

Accordingly, I recommend that Plaintiff's claim of error with respect to the hypothetical posed by the ALJ to the VE be rejected.

## III. The ALJ's Step 2 Analysis of Plaintiff's Mental Impairments

Plaintiff contends that the ALJ should have found that he had a severe mental impairment because Plaintiff: 1) complained of depression, anxiety, and panic attacks to a social worker during an initial assessment at Gateway Healthcare, Inc., on November 16, 2010, two days before the hearing and 2) endorsed those feelings at the hearing.[14] See Plaintiff's Mem. at 16 (citing R. at 32, 370-82).

---

[14] The ALJ questioned Plaintiff regarding his visit to Gateway:

    Q   Yes, I do have a question.  You recently were seen at
        Gateway.  Why did you go to Gateway?

    A   I just been experiencing, like, my heart racing, just I,
        I don't want to do things and I just didn't feel it --
        losing hope, feel like, so somebody -- my friend of my
        son's godfather, 17 years I've known him, he suggested
        -- he sees a counselor.  He suggested that maybe I need
        to talk to somebody.  So that's when I make --

    Q   Are you going to be --

    A   Sorry.

    Q   -- are you going to be going back?

    A   Yeah, I see him every Tuesday.

    Q   Are you on any medication for that?

    A   Not yet.

(R. at 32)

The First Circuit has held that the Step 2 determination is a "*de minimus* screening policy ...," McDonald, 795 F.2d at 1122 (citing Social Security Ruling ("SSR") 85-28, 1985 WL 56856 (S.S.A.)), "designed to do no more than screen out groundless claims," id. at 1124 (citing SSR 85-28). Nonetheless, it is a threshold requirement, see Bowen v. Yuckert, 482 U.S. 137, 147, 107 S.Ct. 2287 (1987)(noting that the "requirement of a threshold showing of severity" is consistent with the legislative history of the Act); McDonald, 795 F.2d at 1123; see also Lonsberry v. Barnhart, No. 01-245-P-H, 2002 WL 449695, at *2 (D. Me. Mar. 25, 2002)(noting that, despite *de minimus* burden, "the plaintiff must still establish that the impairment at issue significantly limited her ability to do basic work activity at the relevant time")(citing Bowen v. Yuckert, 482 U.S. at 145-46), and at Step 2 it is Plaintiff's burden to produce evidence that she suffers from a medically determinable impairment, see Musto v. Halter, 135 F.Supp.2d 220, 233 (D. Mass. 2001)(noting plaintiff's burden of proving disability and stating that plaintiff "first had to demonstrate that he had a medically severe impairment or combination of impairments").

Moreover, a "'primary requirement' under the Act is 'a clinically determinable medical impairment that can reasonably be expected to produce the [symptoms] alleged.'" Dalis v. Barnhart, No. Civ.A. 02-10627-DPW, 2003 WL 21488526, at *9 (D. Mass. June 24,

2003)(quoting <u>Avery v. Sec'y of Health & Human Servs.</u>, 797 F.2d at

21). "[U]nder no circumstances may the existence of an impairment

be established on the basis of symptoms alone." SSR 96-4p, 1996 WL

374187, at *1; <u>see also</u> <u>Dalis</u>, 2003 WL 21488526, at *10 ("An ALJ is

not required to take a claimant's subjective allegations at face

value.")(internal citation omitted). An individual's symptoms will

not be found to affect her ability to perform basic work activities

"unless medical signs and laboratory findings show that there is a

medically determinable physical or mental impairment(s) that could

reasonably be expected to produce the symptom(s) alleged." SSR 96-

4p, 1996 WL 374187, at *2 (citing 20 C.F.R. § 404.1529); <u>see also</u>

20 C.F.R. § 404.1508 (2011)("A physical or mental impairment must

be established by medical evidence consisting of signs, symptoms,

and laboratory findings, not only by your statement of

symptoms.")(internal citation omitted); 20 C.F.R. § 404.1527(a)(1)

(2011)("Your impairment must result from anatomical, physiological,

or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques.").

Plaintiff argues that more weight is generally owed to the

opinion of a specialist about a matter within his or her expertise

under 20 C.F.R. § 404.1527(d)(2), (d)(5).[15]  <u>See</u> Plaintiff's Mem.

---

[15] On March 26, 2012, the text of certain sections of the C.F.R. changed.  Thus, the former § 1527(d)(1)-(6) has become § 1527(c)(1)-(6). The Court uses the format and text of the C.F.R. as it existed when Plaintiff filed his Complaint.

at 16.  However, the individual who assessed Plaintiff on November 16, 2010, was a licensed social worker.  (R. at 372)  SSA's list of "acceptable medical sources" include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and  qualified speech-language pathologists.[16]  20 C.F.R. § 404.1513(a)(1)-(5) (2011).  Social workers may fit the category of "other sources"[17] which may provide evidence of a medical impairment, but the ALJ was not required to give an assessment made by a social worker controlling weight.[18]  20 C.F.R. § 404.1513(d)(1).  Further, the record contains notes from only one visit with this social worker.  (R. at 370-72)  Thus, the Court sees no error in the ALJ's implicit decision not to afford significant weight to the social worker's assessment.[19]  20 C.F.R.

---

[16] "Acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  20 C.F.R. § 404.1513(a)(1)-(5)(2011); see also SSR 06-03p, 2006 WL 2329939, at *1.

[17]  "Other sources" include, but are not limited to: nurse practitioners, physicians' assistants, chiropractors, and therapists. 20 C.F.R. § 404.1513(d)(1); see also SSR 06-03p, 2006 WL 2329939, at *2.

[18] SSR 06-3p clarifies how "opinions from sources who are not 'acceptable medical sources' ...," SSR 06-3p, 2006 WL 2329939, at *1 (S.S.A.), are to be considered, see id.  "The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts of each case."  Id. at *5.

[19] Section 404.1527 provides in relevant part that:

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of

§ 404.1527(d)(2).

It bears noting that Plaintiff was not taking any medication for these mental health complaints. (R. at 32) In addition, Plaintiff reported to the social worker that he was grieving the death of his mother who had passed away eight months prior, which suggests that his impairment was situational. (R. at 373) The diagnosis assigned to Plaintiff was major depressive disorder single episode, moderate, indicating a lower level of severity. (R. at 370)

There is no evidence in the record that Plaintiff sought psychological treatment for anxiety prior to visiting Gateway immediately before the hearing nor that he received a diagnosis of

---

individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2). In evaluating medical opinions, an ALJ is directed to consider the existence of an examining relationship, the existence of a treating relationship, the length, nature, and extent thereof, the supportability of an opinion, the consistency of an opinion with the record as a whole, the specialization of the source, and any other factors which the claimant brings to the adjudicator's attention. See 20 C.F.R. § 404.1527(d)(1)-(6).

anxiety disorder.[20]  On the contrary, the record reveals that Plaintiff reported that his mental health was normal.  (R. at 252, 255-56)  "A diagnosis alone is an insufficient basis for a finding that an impairment is severe." Sellers v. Barnhart, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002); see also Petersen v. Barnhart, 213 Fed. Appx. 600, 604 (9th Cir. 2006)(noting that diagnosis of multiple sclerosis alone could not satisfy Step 2 inquiry); Wood v. Astrue, No. 8:10-CV-2373-T-17AEP, 2012 WL 834132, at *4 (M.D. Fla. Mar. 13, 2012)(noting that although ALJ found plaintiff's substance dependence to be a severe impairment at Step 2, two doctors' diagnoses of additional impairments did not establish that the alleged impairments were severe); Carnley v. Astrue, No. 5:07cv155/RS/EMT, 2008 WL 3896019, at *7 (N.D. Fla. Aug. 21, 2008) (noting that although doctor and others diagnosed plaintiff with depression, "a diagnosis alone does not equate to (or compel) a finding that [p]laintiff's depression is severe")(citing Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 (3rd Cir. 2007)).

The Court finds that Plaintiff has not met his burden of showing that his mental impairments are severe.  Accordingly, I recommend that Plaintiff's third claim of error be rejected.

## Summary

The ALJ did not err in her evaluation of Plaintiff's pain and

---

[20] While Plaintiff was prescribed Xanax in 2007, an anti-anxiety medication, the medication was prescribed by his rheumatologist.  (R. at 361)

credibility, and substantial evidence supports that evaluation. The hypothetical question posed by the ALJ to the VE was not deficient, and any arguable deficiency was waived by Plaintiff's counsel in failing to raise the alleged omission at the hearing. The ALJ's finding that Plaintiff's mental impairments are not severe is supported by substantial evidence. Accordingly, Plaintiff's claims of error should be rejected. I so recommend.

### Conclusion

The Court finds that the ALJ's determination that Plaintiff is not disabled within the meaning of the Act is supported by substantial evidence in the record and is legally correct. Accordingly, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

*/s/  David L. Martin*
DAVID L. MARTIN
United States Magistrate Judge
August 6, 2012